UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **CHRISTIAN LIFE CENTER, INC.** *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:9-cv-3776 |
| | § | |
| **COLONY INSURANCE COMPANY,** | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

Pending before the Court is Foundation Capital Resources, Inc.'s ("FCR") Motion to Intervene ("Motion"). (Doc. No. 41.) Having considered the Motion, all responses and replies thereto, and the applicable law, the Court finds that FCR's Motion must be **GRANTED**.

**I. BACKGROUND**

This case arises out of a dispute between a church and its affiliated day care center and school, which sustained damage during Hurricane Ike, and the insurance company that issued the insurance policy covering the damaged structures. Plaintiffs Christian Life Center, Inc., Christian Life Center Academy, and Christian Life Center Daycare (collectively, "Plaintiffs") filed this lawsuit against Colony Insurance Company ("Defendant") in state court in October 2009 for breach of the insurance contract, as well as for claims under the Texas Insurance Code and the Deceptive Trade Practices Act. Defendant removed the case pursuant to the Court's diversity jurisdiction.

Shortly thereafter, invoking the appraisal clause in the insurance contract, Defendant moved to compel appraisal of the properties. The Court granted Defendant's motion and stayed the case during the appraisal process, which began in March 2010.

In January 2011, Plaintiffs filed a Motion to Lift the Stay, informing the Court that, although the umpire issued an appraisal award, issues remained that required the Court's resolution. The Court granted the motion and lifted the stay. Subsequently, Defendant filed a Motion to Dismiss Plaintiffs' contractual claims because, it claimed, the uncontested appraisal award is binding. Defendant also asked the Court to grant summary judgment as to Plaintiffs' extracontractual claims because, it argued, the evidence conclusively negates these claims as a matter of law. Plaintiffs responded to Defendant's motions, requesting a thirty-day extension to obtain discovery on several of the remaining disputed issues. The Court granted Plaintiffs' request.

Before the Court could rule on Defendant's Motion to Dismiss and for Summary Judgment, however, Plaintiffs filed a document entitled Response to Defendant's Offer of Judgment. The document stated that, in April 2011, Defendant made Plaintiffs an offer of judgment in the amount of $175,000. Plaintiffs stated that they would accept Defendant's offer if the payees listed on the offer of judgment were only Plaintiffs and their attorney. If, however, Defendant's offer of judgment listed persons or entities other than Plaintiffs and their attorney as payees, then the offer would be improper and not unconditional and Plaintiffs would not accept it.

Subsequently, Defendant filed a Reply to Response to Offer of Judgment and Alternative Motion to Join Mortgage Company. In this motion, Defendant argued that Plaintiffs' mortgage lender, FCR, is an indispensable party under Federal Rule of Civil

2

Procedure 19(a)(1)(A) because, it contended, FCR has an equitable lien on the properties and because there is a Loss Payable provision in the relevant insurance policy.  It argued that the mortgage lender must be a co-payee for any payment made either in a settlement or judgment in this matter.  Alternatively, Defendant asked the Court to join the mortgage lender if the parties were unable to resolve the objections to Defendant's offer of judgment.  The Court held a hearing in hopes of resolving the issue of the proper payees for Defendant's offer of judgment, but the parties were unable to come to an agreement.

FRC subsequently filed the present Motion to Intervene pursuant to Rule 24.  FCR alleges that it loaned Plaintiffs approximately $7,000,000 in February 2007 to purchase the properties involved in the case.  FCR claims that Plaintiffs secured the loan by granting FCR a lien on the properties.  Pursuant to section 1.3 of the relevant Deed of Trust, FCR argues, the insurance proceeds Plaintiffs seek to recover have been assigned to FCR. Section 1.3 states in relevant part:

> All insurance proceeds on the Property . . . and all causes of actions, claims, compensation, awards . . . recoveries for any damage . . . or for any damage or injury . . . are hereby assigned to and shall be paid to Lender. At Lender's option, Lender may appear in and prosecute . . . or participate in any suits or proceedings, relating to any such proceeds, causes of action, claims, compensation, awards or recoveries. Lender shall apply any sums received by it under this Section 1.3 first to the payment of all its reasonable costs and expenses (including but not limited to legal fees and disbursements) incurred in obtaining those sums, and then, in its absolute discretion and without regard to the adequacy of its security, to the payment of the indebtedness and obligations secured by this Security Instrument.

(Ex. 2 to Ex. A to Mot. Inv. at 3.)

FCR asserts that, pursuant to Section 1.3, it has an interest related to the properties that are the subject of this lawsuit and disposing of the action may impair or

3

impede its ability to protect its interest in the insurance proceeds. It argues that no deadlines have been established in this case and that its intervention will not delay or prejudice the adjudication of the original parties' rights. Defendant filed a Motion to Dismiss in which it asked for the Court to grant FCR's Motion to Intervene. (Doc. No. 43.) Plaintiffs then filed a response to the Motion to Intervene, to which FCR did not file a reply. (Doc. No. 45.) Defendant later filed a Motion for Leave for Colony Insurance Company to File Declaratory Judgment Action, for Joinder of 600 Charles LLC, and for Partial Abatment, in which it requested joinder of 600 Charles LLC, an entity believed to claim an ownership interest in the payment on the property involved in the litigation. (Doc. No. 49.)

The Court held a hearing on the question of assignability in September, at which the Court granted parties additional time to file briefing on the issue. FCR filed a Brief in Support of its Motion to Intervene Addressing the Issue of Assignability. (Doc. No. 52.) Defendant filed Colony Insurance Company's Response to Plaintiffs' and Foundation Capital Resource, Inc.'s Briefs to the Court (Doc. No. 53) urging joinder of FCR as well as 600 Charles Street LLC. Plaintiffs filed a Supplement to Plaintiffs' Response to the Motion to Intervene of Foundation Capital Resources, Inc. (Doc. No. 51) and Plaintiff's Response to Foundation Capital Resources, Inc.'s Brief in Support of its Motion to Intervene Addressing the Issue of Assignability (Doc. No. 54).

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 24(a), "[o]n a timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by

a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." A party seeking to intervene as of right must satisfy four requirements: (1) timeliness, (2) an interest relating to the action, (3) that the interest would be impaired or impeded by the case, and (4) that the interest is not adequately represented by existing parties. *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 247 (5th Cir. 2009) (citations omitted). If a party seeking to intervene fails to meet any one of those requirements, it cannot intervene as a matter of right. *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) (citing *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1287 (5th Cir. 1987), *cert. denied,* 484 U.S. 817, 108 S.Ct. 72, 98 L.Ed.2d 35 (1987)).

District courts may also grant permissive intervention. Under Federal Rule of Civil Procedure 24(b), "[o]n timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." When "exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(3). Thus "Rule 24(b)(2) provides for permissive intervention when (1) timely application is made by the intervenor, (2) the intervenor's claim or defense and the main action have a question of law or fact in common, and (3) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties." *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 189 (5th Cir. 1989). *See*

*also Chambers Med. Found. v. Petrie*, 221 Fed.Appx. 349, 350 (5th Cir. 2007) ("Under Rule 24(b), permissive intervention is appropriate where 'an applicant's claim or defense and the main action have a question of law or fact in common.'" (quoting *Trans Chem. Ltd. v. China Nat. Mach. Imp. and Exp. Corp.*, 332 F.3d 815, 821-22 (5th Cir. 2003))).

### III. APPLICATION

The Court finds that FCR meets the first two prongs for intervention as of right: timeliness and an interest related to the action. However, FCR fails to sufficiently explain how it meets the last two prongs of the test. Thus, the Court will not grant FCR intervention as of right. However, the Court will grant FCR permissive intervention.

#### A. Intervention as of Right

##### 1. Timeliness

The first factor for intervention as of right, timeliness, has four subparts: (1) the length of time between the would-be intervenor's learning of her interest and her petition to intervene, (2) the extent of prejudice to existing parties from allowing late intervention, (3) the extent of prejudice to the would-be intervenor if the petition is denied, and (4) any unusual circumstances. *In re Lease Oil Antitrust Litig.*, 570 F.3d at 247-48. The analysis is contextual and all circumstances should be considered. Absolute measures of timeliness should be ignored. *Sierra Club*, 18 F.3d at 1205.

###### i. *Length of Time*

The first timeliness factor is "'[t]he length of time during which the would-be intervenor actually knew or reasonably should have known of his interest in the case

before he petitioned for leave to intervene.'" *In re Lease Oil Antitrust Litig.*, 570 F.3d at 248 (quoting *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264 (5th Cir. 1977)). In this case, Plaintiffs allege that, as early as November 2008, FCR was aware that Plaintiffs intended to pursue a Hurricane Ike insurance claim against Defendant. In March 2009, they assert, they gave FCR a status report on their insurance claim. In addition, before Plaintiffs re-financed their mortgage note with FCR in September 2010, Plaintiffs told two FCR employees about the pending lawsuit. At that time, Plaintiffs claim that an employee of FCR told Plaintiffs that FCR was not interested in obtaining any insurance proceeds that may be awarded in connection with this lawsuit. Plaintiffs contend that it was only after Defendant contacted FCR following its offer of judgment attempting to list FCR as a co-payee that FCR moved to intervene.

FCR has not contested these facts. Thus, the Court finds that FCR knew or should have known of its interest in the case in approximately the fall of 2009, more than a year and a half before it moved to intervene.

### ii. *Extent of Prejudice to Existing Parties from Allowing Late Intervention*

The Fifth Circuit makes clear that, with regard to this second sub-factor, "prejudice must be measured by the delay in seeking intervention, not the inconvenience to the existing parties of allowing the intervenor to participate in the litigation." *Sierra Club*, 18 F.3d at 1206. Plaintiffs list a number of actions that have taken place in this case since it was filed in 2009; however, they do not point to any specific ways in which they would be prejudiced by FCR's tardy intervention in this case. Plaintiffs do assert that FCR's attempt to intervene in this action is for an improper purpose. They claim that FCR and Defendant are conspiring in bad faith to deprive Plaintiffs of their insurance

proceeds under the appraisal award. Indeed, Plaintiffs claim, Defendant has indicated that it supports FCR's intervention so that FCR can accept its previous offer of judgment or otherwise settle this case. This potential prejudice to Plaintiffs, however, would not result from FCR's *delay* in seeking intervention in this lawsuit.

### iii. Extent of Prejudice to Would-Be Intervenor if Motion is Denied

If FCR's motion is denied, it will arguably be "forced to institute a separate action." *Skinner v. Weslaco Indep. Sch. Dist.*, No. 99-40541, 2000 WL 959531, at *2 (5th Cir. June 7, 2000). The Fifth Circuit has found prejudice under such circumstances. *Id.* (citing cases). Indeed, given that Plaintiffs appear unwilling to allow FCR to be a co-payee on any settlement check, FCR may be forced to institute a separate action in order to enforce any rights it may possess under the Deed of Trust.

The Fifth Circuit is clear that "[t]he requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner." *Sierra Club*, 18 F.3d at 1205 (citing *McDonald v. E.J. Lavino Co.,* 430 F.2d 1065, 1074 (5th Cir. 1970)). "Federal courts should allow intervention 'where no one would be hurt and greater justice could be attained.'" *Id.*; *see also Sierra Club v. Fed. Emergency Mgmt. Agency*, Civ. No. H-07-0608, 2008 WL 2414333, at *5 (S.D. Tex. June 11, 2008). Under this standard, although FCR delayed nearly a year and a half, it appears that FCR's intervention is timely.

### 2. An Interest Relating to the Action

In addition to timeliness, FCR must demonstrate an interest that will be impaired or impeded if it cannot intervene and that is not adequately represented by the existing parties. To support intervention as of right, FCR must show that it has "a direct,

substantial, legally protectable interest in the action, meaning that the interest be one which the *substantive* law recognizes as belonging to or being owned by the applicant." *In re Lease Oil Antitrust Litig.*, 570 F.3d at 250 (citing *Cajun Elect. Power Coop. v. Gulf States Utils., Inc.*, 940 F.2d 117, 119 (5th Cir. 1991)) (internal quotations omitted).

Here, FCR contends that, pursuant to section 1.3 of the Deed of Trust, the insurance proceeds Plaintiffs seek to recover have been assigned to FCR. Thus, it argues, it has a legally protectable interest in any award Plaintiffs recover in this case. Plaintiffs counter that FCR has no such interest in this lawsuit because the insurance policy at issue contains a non-assignment clause that is enforceable under Texas law.

Indeed, Plaintiffs contend, paragraph F of the insurance policy's Common Policy Conditions is entitled "Transfer of Your Rights and Duties Under This Policy" and states in pertinent part: "Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured." (Doc. No. 28-2.) Plaintiffs argue that such non-assignment clauses have been enforced consistently by Texas courts and, thus, Plaintiffs' right to recover insurance proceeds under that policy could not be assigned without Defendant's prior written consent. Plaintiffs argue that Defendant never granted Plaintiffs written consent to any assignment of their rights under the insurance policy and, thus, the clause in the Deed of Trust purporting to assign Plaintiffs' rights to all "insurance proceeds on the Property" is invalid. Because the invalid assignment clause in the Deed of Trust is FCR's only asserted basis for a legally protectable interest in this case, Plaintiffs argue, FCR's motion must be denied.

Plaintiffs cite authority holding that non-assignability clauses, including provisions in insurance contracts, are enforced in Texas. (Supp. to Pl.'s Resp., Doc. No. 51 at 2-3.) As Plaintiffs correctly observe, the Fifth Circuit has "recogniz[ed] that 'Texas law permits the enforcement of no-assignment clauses in insurance policies.'" *Keller Found., Inc. v. Wausau Underwriters Ins. Co.*, 626 F.3d 871, 875 (5th Cir. 2010) (quoting *Conoco, Inc. v. Republic Ins. Co.*, 819 F.2d 120, 124 (5th Cir. 1987)). *See also Tex. Develop. Co. v. Exxon Mobil Co.*, 119 S.W.3d 875, 880 (Tex.App.-Eastland 2003) ("In Texas, anti-assignment clauses are enforceable unless rendered ineffective by an applicable statute."); *Dr. Michael Hoffman & Assoc. v. St. Paul Guardian Insur. Co.*, No. 05-04-00902-CV, 2005 WL 1950848, at *3 (Tex.App.-Dallas Aug. 16, 2005) ("Our guiding principle governing the interpretation of insurance policies is to give effect to the parties intent as expressed in the policy's plain language. The clear language of the policy provision prohibits the insured from assigning its interest in the policy."). As support, Plaintiffs point to a recent case in the District Court for the Southern District of Texas which held, applying *Keller Found., Inc.*, that the non-assignment provisions of an insurance policy precluded assignment of the insured's rights to the assignee absent written consent of the insurer. *Nautilus Ins. Co. v. Concierge Care Nursing Ctr, Inc.*, Civ. No. H-10-2243, 2010 WL 5449849 (S.D. Tex. Dec. 28, 2010).

Yet in these cases, assignees sought to recover directly from the insurance company, and the insurance company attempted to enforce the non-assignment provision. FCR does not dispute that if it were to assert a claim directly against Defendant, Defendant could invoke the non-assignability clause as a defense. (Brief in Supp., Doc. No. 52 at 4.) In this case, however, the assignor, not the insurance company, seeks to

10

enforce the non-assignment clause. Indeed, Defendant supports FCR's intervention. The Court finds that these cases do not elucidate whether an assignor can enforce a non-assignment clause in an insurance contract when the insurance company seeks to waive it.

In fact, authority suggests that non-assignment clauses exist for the benefit of the insurance company, and can be waived. At least one source has written, "[a] stipulation against its assignment, in a policy, is only for the insurer's benefit, and does not enable an assignor to avoid the assignment." 44 AM. JR. 2D INSUR. § 785 (2011). Further, under Texas law, non-assignment clauses can be waived. *Johnson v. Structured Asset Serv., LLC*, 148 S.W.3d 711, 722 (Tex.App.-Dallas 2004) ("An anti-assignment clause can be waived and the laws governing the waiver of contractual rights apply."). *See also* 6 AM. JUR. 2D ASSIGNMENTS § 24 (2011) ("A contract provision prohibiting or restricting an assignment may be waived, or a party may be prevented from objecting to the assignment by effectively ratifying the assignment." (footnote omitted)); *Citibank, N.A. v. Tele/Resources, Inc.*, 724 F.2d 266, 269 (2d Cir. 1983) ("Even a specific prohibition against assignments made without written consent may be waived in favor of an assignee."). "Waiver is the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Dr. Michael Hoffman & Assoc.*, 2005 WL 1950848, at *3. By consenting to FCR's intervention in this lawsuit, Defendant seems to have intentionally relinquished a known right. Rather than support Plaintiffs' position, the weight of authority suggests that Plaintiffs may *not* be able to enforce an anti-assignment clause in an insurance contract to defeat its prior assignment to a mortgage company.

Furthermore, this case involves assignment *to a mortgage company prior to obtaining insurance under an insurance policy*. Plaintiff asserts: "Without any authority, FCR contends that a mortgage company as an assignee is somehow different from other assignees when an insured/assignor tries to assign a right under an insurance policy without the insurer's prior written consent. There is no difference! A mortgage company is still an assignee of an insured and the controlling authority does not make any distinctions between assignees." (Pl.'s Resp. to FCR's Brief, Doc. No. 54 at 2.) The Court disagrees. As FCR points out, Deeds of Trust in the state of Texas commonly include assignments of insurance proceeds. It would make little sense for mortgage companies to include such assignment clauses if they were defeated by non-assignment provisions in insurance contracts. (Brief in Supp. at 2.) Moreover, Plaintiffs obtained insurance *after* it signed the mortgage contract, meaning that FCR had no control over the kind of insurance Plaintiffs obtained and whether or not the insurance contract contained a non-assignability provision. (*Id.* at 3.)

The Court thus finds that FCR has an interest relating to the action. The Deed of Trust assigns insurance proceeds to FCR. Although the insurance contract contains a non-assignment provision, Defendant does not seek to enforce it. Plaintiffs have not offered authority supporting its position that it can independently enforce the non-assignment clause. The Court has not been able to find authority supporting Plaintiffs' position, either. Instead, authority suggests that non-assignment provisions in insurance contracts exist to protect the insurance company, and can be waived. In the absence of further guidance on the matter, and given that Defendant supports intervention, the Court finds that Plaintiffs do not have a right to independently enforce the insurance contract's non-

assignability provision in order to defeat its prior assignment to its mortgage company, FCR.

### 3. The Interest Would Be Impaired or Impeded by this Case and the Interest is Not Adequately Represented by the Existing Parties

FCR claims that "disposing of this action may impair or impede FCR's ability to protect its interest in the insurance proceeds." (Mot. Inv. at 2.) Unfortunately, FCR does not provide any support for this statement. Furthermore, FCR does not even allege that its interest is not adequately represented by existing parties. "The applicant has the burden of demonstrating inadequate representation, but this burden is 'minimal.' The applicant need only show that representation 'may be' inadequate." *Sierra Club*, 18 F.3d at 1207 (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). By failing to even allege that its interest is not adequately represented, let alone explain why, FCR has fallen short of even this minimal burden. Of course, the "criteria [for intervention as of right] are mandatory, but '[r]ule 24 is to be construed liberally, … and doubts resolved in favor of the proposed intervenor.'" *In re Lease Oil Antitrust Litig.*, 570 F.3d at 248 (quoting 6 James W. Moore et al., *Federal Practice* § 24.03 (1)(a), at 24-22 (3d ed. 2008)). Even construing Rule 24 liberally, however, FCR has failed to meet its burden of showing its interest is impaired or impeded and not adequately represented. As FCR has not explained how it meets these last two prongs, the Court denies intervention as of right.

### B. Permissive Intervention

Under the permissive intervention standard, the Court may grant "intervention when (1) timely application is made by the intervenor, (2) the intervenor's claim or defense and the main action have a question of law or fact in common, and (3) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties." *League of United Latin Am. Citizens, Council No. 4434*, 884 F.2d at 189. First, as shown above, the intervenor's application is timely. Second, as the intervenor has been assigned the insurance proceeds, its claim and the main action have a question of fact in common. Third, because the Plaintiffs in fact assigned its right to the insurance proceeds to FCR, the intervention will not unduly delay or prejudice the adjudication of Plaintiffs' rights. If anything, the intervention may obviate the need for future litigation between FCR and Plaintiffs or FCR and Defendant. For these reasons, the Court grants permissive intervention of FCR.

## IV. CONCLUSION

For the foregoing reasons, FCR's Motion to Intervene is **GRANTED.**

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this 11th day of October, 2011.

_____
**KEITH P. ELLISON**
**UNITED STATES DISTRICT JUDGE**